Filed 12/19/13  P. v. Velez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>LUIS VELEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B250633<br>(Super. Ct. No. F488055)<br>(San Luis Obispo County) |

Luis Velez appeals from the judgment entered after the trial court determined that he was a mentally disordered offender (MDO; Pen. Code, § 2962.)[1] Appellant claims that he has a constitutional and statutory right to refuse medication which trumps the MDO requirement that a prisoner voluntarily comply with his or her treatment plan. (§ 2962, subd. (a)(3).)  We affirm.  Appellant denies that he has a mental illness and has refused to take his prescribed medication which supports the finding that the severe mental disorder cannot be kept in remission without treatment.  ((*Ibid*.; *In re Qawi* (2004) 32 Cal.4th 1, 24; *People v. Beeson* (2002) 99 Cal.App.4th. 1393, 1399.)

Appellant suffers from a severe mental disorder (paranoid schizophrenia), manifested by auditory and tactile hallucinations, and delusional thinking.  In 2008 he

---

[1] All statutory references are to the Penal Code.

was convicted of assault with a deadly weapon and battery on a peace officer and sentenced to state prison. On March 28, 2013, the Board of Parole Hearings (BPH) certified that appellant was an MDO. Appellant filed a superior court petition challenging the MDO determination and waived jury trial. (§ 2966, subd. (b).)

Doctor Brandi Mathews, a psychologist at Atascadero State Hospital (ASH), testified that appellant met all the MDO criteria[2] and the mental disorder could not be kept in remission without treatment. Appellant refused to attend most of his treatment groups and in June 2012 refused to take medication prescribed by his treating psychiatrist. Doctor Matthews testified that appellant was asymptomatic at the time of the BPH hearing but would suffer a relapse without treatment. The hospital did not obtain a *Qawi* order to involuntarily medicate appellant because he was not violent and made no threats.

*Voluntary Compliance with Treatment Plan*

Appellant argues that he has a statutory and constitutional right to refuse prescribed antipsychotic medication. (Welf. & Inst. Code, § 5325.1, subd. (c); *Sell v. United States* (2003) 539 U.S. 166, 178-179 [156 L.Ed.2d 197, 210-211]; *Washington v. Harper* (1990) 494 U.S. 210, 221 [108 L.Ed.2d. 178, 197-198]; *In re Qawi*, *supra,* 32 Cal.4th at pp. 14-16.) A court may order an MDO to take antipsychotic medication in a non-emergency situation only if the court "makes one of two findings: (1) that the MDO is incompetent or incapable of making decisions about his medical treatment; *or* (2) that the MDO is dangerous within the meaning of Welfare and Institutions Code section 5300." (*Id.*, at pp. 9-10.) A similar right is afforded mentally ill persons incarcerated in

---

[2] The six criteria for an MDO commitment are: the prisoner (1) has a severe mental disorder; (2) used force or violence in committing the underlying offense; (3) had a mental disorder that caused or was an aggravating factor in the commission of the underlying offense; (4) the disorder is not in remission or capable of being kept in remission without treatment; (5) the prisoner was treated for the disorder for at least 90 days in the year prior to his parole or release; and (6) the prisoner poses a serious danger of physical harm to others by reason of the disorder. (§ 2962, subd. (d)(1); *People v. Clark* (2000) 82 Cal.App.4th 1072, 1075-1076.)

2

state prison.  (§ 2602; *Keyhea v. Rushen* (1986) 178 Cal.App.3d 526, 540-541; *In re Qawi*, *supra,* 32 Cal.4th at p. 21.)

Appellant claims that *Qawi* exempts him from the MDO requirement that he voluntarily participate in his treatment plan.  He frames it as a "substantial evidence" issue but the facts are undisputed.  Appellant went off his medication in June 2012.  Doctor Matthews opined that appellant posed a substantial risk of harm to others  because the symptoms will reappear and appellant will "present" as he did when he committed the prior assaults.[3]  Appellant was not taking his medications and paranoid when he committed the assaults in 2006 and 2007.  The evidence further shows that appellant performed poorly on supervised release and had a history of not taking his medication and becoming violent when symptomatic.  Doctor Matthews noted that appellant refused his medication in June 2012 and by October 2012 "was quite symptomatic. . . ."

The evidence clearly shows appellant poses a substantial risk of harm to others due to a mental disorder that cannot be kept in remission without treatment.  (§ 2962, subd. (a)(3).)  Appellant argues that he has a due process to refuse prescribed medication.  That may be so but the MDO Act requires voluntary compliance with the entire "treatment plan," which in appellant's case includes medication and group therapy sessions.  (*Ibid*.)  The state has a compelling interest in protecting the public and providing severely mentally disorder prisoners an appropriate level of mental health treatment.  (§ 2960; *People v. Allen* (2007) 42 Cal.4th 91, 97-98.)  As stated in *In re Qawi,* "[A] finding of recent dangerousness is not required.  The 'cannot be kept in remission without treatment' standard can . . . be found when a person 'has not voluntarily

---

[3] In the December 2006 assault, appellant became enraged when his boyfriend asked him not to leave the furnace on and the front door open.   Appellant struck the victim more than 50 times in the head, fracturing the victim's eye socket and inflicting multiple facial bruises.   Appellant had a "crazed" look and told the police "I have my own government to prove."   With respect to the June 2007 assault, appellant became agitated when moved to a jail cell.  Appellant assumed a fighting stance with clenched fists and kicked one officer in the stomach, struck another officer in the face, and kicked a third officer in the knee.

followed the treatment plan' during the year prior to the commitment or recommitment proceeding. [Citation.]" (*In re Qawi*, *supra,* 32 Cal.4th at p. 24.)

Appellant denies that he has a mental illness and denies that he needs medication for his mental disorder. It is a telling MDO factor. (§ 2962, subd. (a)(3).) "A reasonable person, whose mental disorder can be kept in remission with treatment, must, at minimum, acknowledge if possible the seriousness of his mental illness and cooperate in all mandatory components of his treatment plan." (*People v. Beeson, supra,* 99 Cal.App.4th at p. 1399.) *Qawi* does not empower appellant to do an end run around the MDO Act.

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

4

Rita Federman, Judge

Superior Court County of San Luis Obispo

_____


Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Ertic J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.